UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTINE M. MILLS, <br><br> Plaintiff, <br><br> v. <br><br> CARLA HAYDEN, in her official capacity as Librarian of Congress, <br><br> Defendant. | Civil Action No. 17-1257 (JEB) |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Christine M. Mills, a long-time employee of the Library of Congress's Collection Access, Loan Management (CALM) Division, brings this suit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. She principally claims that the Library passed her up for a promotion on the basis of her race, national origin, color, and sex, and in retaliation for engaging in protected activity. Librarian Carla Hayden now moves to dismiss on two grounds. First, she argues that Plaintiff's entire suit is time-barred; second, she alternatively asserts that Mills failed to properly exhaust her national-origin claim. Disagreeing on both scores, the Court must deny the Motion.

**I. Background**

According to her Complaint, which the Court must presume true at this stage, Mills is a 34-year veteran of the (somewhat inaptly named) CALM Division. See Compl. at 5. Starting in 2007, she repeatedly applied for — and was denied — promotions, watching the Library fill each position with employees from outside the Division. Id. at 4-5. Finally, in 2016, she sought one

of two open positions as a Reference Library Technician within CALM, but the Library once again tapped out-of-house employees for the slots. Id. at 5.

Apparently reaching a tipping point after having been denied at least eight positions in ten years, Mills filed an informal complaint with the Library on June 16, 2017, attributing her non-selection to her race, sex, and age, and to retaliation. See Compl., Exh. A (Informal Complaint). Shortly thereafter, she followed up with a formal complaint along the same lines, tacking on color and national origin as additional bases for the alleged discrimination. See MTD, Exh. 3 (EEO Complaint). After an investigation, the Designee of the Chief of the Library's Equal Employment Office/Diversity Program (EEO/DP) issued a Decision Letter, dated February 3, 2017, finding insufficient evidence to support Plaintiff's claims. See MTD, Exh. 1 (Decision Letter) at 1, 8. Consistent with the Library of Congress's internal regulations, the letter advised Mills that she would have five workdays after receipt to request reconsideration or fifteen workdays to request a hearing or a Final Agency Decision without a hearing. Id. at 8 (citing LCR 2010-3.1 § 10). Finally, it alerted her: "If you do not timely seek a hearing or Final Decision from the Librarian without a hearing, this decision shall constitute the Library's Final Agency Decision." Id. at 8.

Plaintiff failed to meet either deadline. Her request for reconsideration came due on February 10, but she waited until February 24 to ask for an extension. See Compl., Exh. B at 1. The agency declined to excuse the delay, informing her as much on two separate occasions. Id. at 2, 4. Likewise, Mills needed to request a hearing (or a Final Decision without a hearing) by February 27 but took no such action until March 21. Id. at 5. Once again, the agency denied her request as untimely. Id. at 7. She ultimately brought this suit on June 27. See ECF No. 1.

**II.     Legal Standard**

The Librarian first argues that Plaintiff's suit is untimely and the Court should thus dismiss it under Federal Rule of Civil Procedure 12(b)(6).  That Rule provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted).

In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).  The Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted).  It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the Complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Even at the Rule 12(b)(6) stage, a Court can review "documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted); see also Banneker Ventures, LLC v. Graham, 798

F.3d 1119, 1134 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment."). In this case, Mills has failed to attach the Decision Letter to her Complaint, but her exhibits frequently nod to it. Defendant has included a valid copy with its Motion to Dismiss, see MTD, Exh. 1, so the Court may properly consider that document.

Defendant alternatively moves to dismiss at least one of Plaintiff's claims for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1). To survive such a motion, Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear her claims. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 & n.3 (2006); Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction. . . ." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, L.L.C. v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005).

## III. Analysis

The Librarian maintains that because Plaintiff failed to timely file suit, this case must be dismissed. At a minimum, she contends that the Court should toss Mills's national-origin claim for failure to exhaust. The Court addresses each argument in turn.

### A. Statute of Limitations

Under Title VII, employees must commence their action in district court "[w]ithin 90 days of receipt of notice of final action" taken by the relevant agency. See 42 U.S.C. § 2000e-

4

16(c). That deadline is "strictly enforced," Horsey v. Harris, 953 F. Supp. 2d 203, 210 (D.D.C. 2013), and courts "will dismiss a suit for missing the deadline by even one day." Woodruff v. Peters, 482 F.3d 521, 525 (D.C. Cir. 2007) (quoting Wiley v. Johnson, 436 F. Supp. 2d 91, 96 (D.D.C. 2006)); see also McAlister v. Potter, 733 F. Supp. 2d 134, 142 (D.D.C. 2010) (same). The fact that Plaintiff is representing herself "does not render [her] immune from the ninety-day requirement." Anderson v. Local 201 Reinforcing Rodmen, 886 F. Supp. 94, 97 (D.D.C. 1995); see also Smith v. Dalton, 971 F. Supp. 1, 2-3 (D.D.C. 1997) (barring *pro se* litigant who missed ninety-day deadline by one day).

So when did the clock start ticking in this case? At first blush, the answer might seem to be February 27. Plaintiff received a written decision on February 3, along with notice that the decision would become final absent timely action on her part. See Decision Letter at 1, 8; Compl., Exh. B at 7 ("The EEO/DP notified you of the Chief's decision on February 3, 2017."). Plaintiff let the due dates for action slide by, missing both the February 10 deadline to request reconsideration and the February 27 deadline to seek a hearing. See Compl., Exh. B at 1, 5. As such, the Decision Letter became the agency's final decision by the latter date — the last day Plaintiff might have challenged the letter. See Continental Resources v. Jewell, 846 F.3d 1232, 1234 (D.C. Cir. 2017). To file within 90 days of that decision, Plaintiff would need to have commenced her action by May 28. As she did not do so until June 27, she appears out of luck.

But, as an old aphorism teaches, appearances can be deceiving. While Mills does not seriously dispute this timeline, she pleads that she did not "receive[] a notice of her right to sue" until May 10. See Compl. at 2 (emphasis added). As recent D.C. Circuit precedent makes clear, an agency action cannot "trip the ninety-day filing limit" without providing a litigant "notice of [her] rights to further review." Al-Saffy v. Vilsack, 827 F.3d 85, 95 (D.C. Cir. 2016); see also

5

DeTata v. Rollprint Packaging Prods. Inc., 632 F.3d 962, 970 (7th Cir. 2011) ("Notice is inadequate when the [Government] fails to inform a claimant of the time within which suit must be filed.").

Although Title VII conditions the start of the ninety-day time limit for filing suit on the employee's "receipt of notice of final action taken by a department, agency, or unit[,]" 42 U.S.C. § 2000e-16(c), the Court of Appeals has held "that notice of final agency action alone does not start that ninety-day clock running." Al-Saffy, 827 F.3d at 95 (quoting Williams v. Hidalgo, 663 F.2d 183, 186 (D.C. Cir. 1980)). Under 29 C.F.R. § 1614.110(b), that decision must also be "[a]ccompanied by 'notice (1) of [the employee's] right to file a civil action and (2) of the . . . time limit on filing such action.'" Id. (second alteration in original) (citation omitted); see also Williams, 663 F.2d at 187 (holding Title VII "itself require[s] that notice of final agency action include notice of the right to sue and of the [then] thirty-day limitation"). Until the Library provides such notice, it cannot "start the running of the time limitation." Al-Saffy, 827 F.3d at 95 (quoting Williams, 668 F.2d at 197).

The Decision Letter is thus not up to the mark. True, it warned Mills: "If you do not timely seek a hearing or a Final Agency Decision from the Library without a hearing, this decision shall constitute the Library's Final Agency Decision." Decision Letter at 8. But the letter references her right to file a civil action only once: if the Library had "not issued a Final Agency Decision on [her] complaint of discrimination within one hundred and eighty (180) days." Id. (emphasis added). It made no mention of her right to file after a final decision, much less did it include the 90-day time limit for bringing such an action. Instead, the agency waited until May 10 to inform Mills by email that "an individual who is dissatisfied with the Library's Final Agency Decision has the right to file a civil action with the appropriate federal district

court within ninety (90) days of his/her receipt" of that decision. See Compl., Exh. B (e-mail from Julia O'Brien).

Al-Saffy leaves no doubt that this deficiency "alone bars application of the ninety-day limitation period." 827 F.3d at 95. That is true even though the Decision Letter, when issued, did not yet constitute final agency action. As the Court of Appeals reasoned, "It would frustrate the very purpose of the notice regulations" to allow a decision, such as the Letter, to "automatically trigger the statute of limitations without providing notices equivalent to those required by § 1614.110." Id. (quoting Staropoli v. Donahoe, 786 F. Supp. 2d 384, 390 (D.D.C. 2011)); see also Moncus v. Johanns, No. 03-416, 2006 WL 163309, at *8 (M.D. Ala. 2006) (same). Running the clock would be especially pernicious here, as the agency expressly notified Plaintiff of her right to file suit if it failed to take final action. A layperson might well think there was no basis for filing if the agency did, in fact, issue a final decision.

"Because Title VII requires final agency action to notify the employee of his right to appeal and the governing time limitation," the Decision Letter "did not trigger the ninety-day deadline." Al-Saffy, 827 F.3d at 95. It was not until May 10, when the agency finally alerted Mills of her right to sue, that the countdown could begin. Plaintiff's suit — filed June 27 — falls within that 90-day window and therefore gets the green light to proceed.

B. Failure to Exhaust

Although Mills's Complaint contains other fairly notable deficiencies — *e.g.*, insufficient allegations for hostile work environment and no mention of exhaustion of other, pre-2016 adverse actions — the government attacks only Plaintiff's national-origin claim by asserting failure to exhaust. To bring a civil action under Title VII, an employee must first timely file an administrative claim with the employing agency (here, the Library of Congress) and exhaust all

7

internal remedies. See Brown v. Gen. Serv. Admin., 425 U.S. 820, 832-33 (1976). "Only those claims that are contained in the administrative complaint or that are 'like or reasonably related' to the allegations of the administrative complaint can be raised in a Title VII lawsuit." Ndondji v. InterPark, Inc., 768 F. Supp. 2d 263, 276 (D.D.C. 2011) (quoting Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)). As it happens, Plaintiff followed that playbook to a tee. In her 2016 EEO Complaint, she checked boxes to indicate discrimination based on race (African American), color (Black), gender (Female), age (54), retaliation, and national origin (African American). See MTD, Exh. 1.

Defendant nevertheless takes issue with this latter charge because the EEO Complaint repeats the same basis — "African American" — for her national-origin claim as for her race claim. See MTD at 9. She believes, as a result, that Plaintiff never "state[d] a national origin claim separate from her race claim prior to the Final Agency Decision," and has thus failed to exhaust that charge. Id. at 11.

This argument finds no traction. It is true that courts in this district have sometimes treated race and national-origin discrimination as "two separate claims," both of which must be exhausted at the EEO stage. See Nyunt v. Tomlinson, 543 F. Supp. 2d 25, 35-36 (D.D.C. 2008). At most, however, a plaintiff must "check" both "race" and "national origin" as bases for discrimination in her administrative complaint. Compare id. (holding claim for racial discrimination not exhausted when plaintiff "checked the categories of age and national origin" in his EEO Complaint but "failed to select" race as a basis); Sisay v. Greyhound Lines, Inc., 34 F. Supp. 2d 59, 64 (D.D.C.1998) (holding that pursuing racial discrimination at EEO stage did not preserve claim of national-origin discrimination), with Brown v. Georgetown Univ. Hosp. Medstar Health, 828 F. Supp. 2d 1, 7 n.3 (D.D.C. 2011) (allowing claims for discrimination

based on national origin as an "African American" and race to proceed despite plaintiff's failure to specifically check "race" at the EEO stage). Defendant cites no case — and this Court has uncovered none — in which a Plaintiff did check the appropriate boxes in her EEO Complaint but nevertheless was held to have failed to exhaust. On the contrary, "[w]hen an employee is uncertain which type of discrimination has occurred," she may "simply check[] the labeled box" or "describe it in the text of the charge form.'" Williams, 883 F. Supp. 2d at 174 (quoting Carter v. Wash. Post, No. 05-1712, 2006 WL 1371677, at *4 (D.D.C. May 15, 2006)). Mills thus gave the agency all the notice needed by indicating that she would pursue a "national origin" claim as an "African American."

That this charge might overlap with her race one is of no moment. National origin relates to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 88 (1973). "Here, of course, [Mills's] ancestral reference is a continent, not a country. But because [she] is African-American, she not only can support her race claim, but also can support her national origin claim." Brown, 828 F. Supp. 2d at 8 n.3. Indeed, Courts regularly accept without question a Title VII national-origin discrimination claim where the plaintiff is African-American. Id. (collecting cases). Although race and national origin can be "closely related in some cases," Dequan Lin v. Salazar, 891 F. Supp. 2d 49, 55 (D.D.C. 2012) (quoting Brown, 828 F. Supp. 2d at 7), the important point, at least for exhaustion purposes, is that Mills alerted the Library of her plan to pursue each claim.

## IV. Conclusion

For the foregoing reasons, the Court holds that Plaintiff properly exhausted her administrative remedies and that her suit is timely. It will therefore deny Defendant's Motion to Dismiss and issue a contemporaneous Order so stating this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 4, 2018